INDUSTRIAL TRUST COMPANY, *Tr. vs.* FRANCES WILSON BUDLONG, *et al.*

DECEMBER 1, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   This is a bill in equity for the construction of an *inter vivos* trust instrument and for instructions relative thereto. All persons having an interest therein were made parties respondent. Guardians *ad litem* for certain necessary parties and a representative for possible but unascertained interests were appointed and they have filed answers submitting to the protection of the court the interests of those whom they represent. Decrees *pro confesso* were entered against Mabel Woolsey (Mrs. George A. Woolsey), surviving sister of the settlor, and Janice Herrington Brandt, heir of Fannie Herrington, deceased sister of the settlor, whose interests are not involved under the trusts in question, and against Trinity Church, of Newport, Rhode Island, a contingent beneficiary under certain gifts over after the termination of all the trusts involved. All other respondents, being competent parties, have filed answers joining in the prayers of the bill for construction of the trust instrument and for instructions to the complainant as successor trustee thereunder.

Testimony was introduced bearing particularly on the methods of administration and accounting employed by the settlor trustee before his death. The cause being ready for hearing for final decree was then certified to this court for determination under general laws 1938, chapter 545, §7.

Milton J. Budlong, an experienced and successful busi-

nessman residing in this state, by instrument executed July 1, 1929 established himself as trustee of five separate trust estates for the benefit respectively of Frances Budlong, John Budlong and Milton Joseph Budlong, his children, and of Mrs. Fannie Herrington and Mrs. George A. Woolsey, his two sisters.

Although the questions here involve particularly the construction of the words "income accumulated" appearing in clause second, the following quotations from, and summary of, the second, third and fourth clauses of the trust instrument will help toward the understanding of the contentions here presented. For convenience we have italicized the words "income accumulated" or "accumulated income" wherever they appear in these clauses.

The first paragraph of clause second provides: "Said trustee shall pay over to and/or expend for the benefit of the several principal beneficiaries so long as they shall respectively live, such part (or all) of the net income of said trusts for their respective benefits as in each case said trustee in his discretion shall from time to time deem advisable . . . ."

Then follow certain provisions referring to the trusts for the benefit of the settlor's sisters and for children of any deceased child of the settlor and the first paragraph concludes as follows: "Said trustee may in his discretion add from time to time any undistributed income to the principal of its respective trust."

The second paragraph of clause second then continues as follows: "After said Milton J. Budlong shall cease to act as trustee or a trustee hereunder by reason of his death or otherwise, the trustee or trustees hereunder shall, notwithstanding the foregoing . . . pay over to the said Frances Budlong all of the net income of the trust established for her benefit (not including, however, any *income accumulated* from prior years) and shall pay over to each of said principal beneficiaries who is a son of the settlor who shall have graduated from college or shall have reached the age

of twenty-five (25) (whether or not he shall have attended college) . . . all of the net income of the trust established for his benefit (not including, however, any *income accumulated* from prior years) . . . ." The portion omitted from the latter part of this quotation merely refers to certain discretionary powers of the settlor trustee over the net income in the case of any attempted assignment, encumbrance or attachment of any beneficial interest or of bankruptcy of any of the beneficiaries.

Clause third provides that in case of the death of any child of the settlor leaving issue "said trustee shall pay over and transfer all of the principal of the trust established for such principal beneficiary, together with all *accumulated income* thereof, in equal shares, *per stirpes* and not *per capita,* among the lawful issue of such principal beneficiary who shall be surviving. . . . . Upon the death of any of said principal beneficiaries who are children of the settlor without leaving lawful issue him or her surviving, or in case of the failure of such issue of any such principal beneficiary who is a child of the settlor before becoming entitled to distribution in accordance with the foregoing of the trust for such principal beneficiary, the remaining principal of such trust in each such case, together with all *accumulated income* thereof and additions thereto, shall be divided equally among and follow the disposition of the trusts hereby established for the other principal beneficiaries. . . . Upon the respective deaths of the said Mrs. Fannie Herrington and Mrs. George A. Woolsey the remaining principal of the trust established for her benefit in each case, together with all *accumulated income* thereof, shall be divided equally among and follow the disposition of the trusts hereby established for the principal beneficiaries who are children of the settlor . . . ."

Clause fourth provides: "Upon the death of all of said principal beneficiaries and the failure of lawful issue of all of them who are children of the settlor before all of said trust estates shall have become finally distributable in ac-

cordance with the foregoing, said trustee shall transfer and pay over all of said trust estates then remaining undistributed, together with any *accumulated income* thereof, in equal shares, to Trinity Church located in Newport, Rhode Island, and to Newport Hospital located in said Newport, or to the organization in said Newport commonly known by those names, in each case for its general purposes." The subsequent clauses of the instrument are not presently material.

The instrument, as stated, was executed July 1, 1929. Milton J. Budlong, the settlor, died testate at Newport July 5, 1941 without having named any other trustee by will or otherwise. He had acted during that period as the sole trustee of each of the five trusts. As trustee he had exercised his discretion to pay only part of the net income to his children and that at irregular intervals, in varying amounts, sometimes in cash and sometimes by payment of bills or otherwise for their respective benefits. He had kept or supervised ledger books of account showing the details of each transaction affecting the various trusts. Almost from the beginning the books were set up so as to contain under each trust a special column for undistributed income and another column immediately adjoining for distributed income.

A stipulation has been entered in which all counsel apparently agree that the entries in the books of account as kept by the settlor do not show any affirmative action by him whereby he ever added net income to the principal of any trust. The settlor, however, made additions from time to time to the principal of each trust by way of subsequent gifts. As a result of such gifts and of dividends and other gains the trust in the case of each child had grown from approximately $3500 to well over $100,000. The books were always balanced as of December 31 of each year. At the time of the settlor trustee's death his three children were then living and over twenty-five years of age; and certain credits appeared on the books under undistributed income

in each of their trusts as follows: Frances Budlong, $6585.44; John Budlong, $28,778.95; Milton Joseph Budlong, $20,027.60.

The Industrial Trust Company, complainant here and the successor trustee named in the instrument, has come into possession of all the trust estates, securities and cash, including the above-mentioned undistributed income. It is in doubt whether its powers and duties under the trust instrument require it to pay over any of the funds credited on the books in each trust as undistributed income and, if so, how much thereof should be paid over to each life beneficiary. This doubt is brought about by the express wording of the second paragraph of clause second, previously quoted, in which the successor trustee was directed to pay over to the settlor's children all of the net income of the trusts established for their benefit "(not including, however, any *income accumulated from prior years*)." (italics ours)

The specific questions proposed are whether Frances Wilson and Milton Joseph Budlong, children of the settlor, and John Budlong, the minor child of John Budlong, deceased son of the settlor, are entitled to receive all or any of the funds credited on the books of account to their respective trusts under the heading of undistributed income; and, if any, what part thereof the successor trustee should pay over to them respectively. They also ask what period is contemplated by the words "from prior years" which appear in clause second in the qualifying phrase "(not including, however, any income accumulated from prior years)".

Counsel for the settlor's children are not in accord as to the nature of their interests in the established trusts prior to the settlor's death. One contends that the children took from the beginning vested life interests in the net income subject, however, to being divested by the settlor's exercise of his discretion to add it to principal. The other contends that such life interests were not vested but were contingent from the beginning upon the settlor's exercise of his discretion not to add it to principal. Nevertheless both now

join in the common contention that, upon the death of the settlor without having exercised such discretion as to any of the trusts, the children's interests were vested and they are entitled to all the money credited in their respective trusts under "undistributed income".

In support of this claim they argue, as we understand it, that the words "accumulated" or "income accumulated" have a special and technical meaning in the law of trusts; that such meaning necessarily connotes two affirmative acts by the trustee, namely, (1) the withholding of net income from distribution; (2) the actual adding of that income to principal; and that since the instrument was drawn by an experienced lawyer it is to be presumed that he used these words in clause second only in that technical sense. From that assumption they argue further that if such technical meaning be assigned to these words in clause second, where the successor trustee is directed to "pay over . . . all of the net income . . . (not including, however, any income accumulated from prior years)", the meaning thereof is clear and consistent with the probable intent of the settlor.

According to this construction the successor trustee is directed to pay over all of the net undistributed income to the life beneficiaries of these trusts and is restricted *only* from paying over such income as the settlor had withheld and had *actually added* to the principal of these trusts. They then argue that, since the evidence shows that the trustee never affirmatively exercised his discretionary power to add any of such income to the principal of any of the trusts in question, the money kept and credited by him to the respective trusts under "undistributed income" therefore remained net income at all times and should now be distributed to the life beneficiaries of these trusts in accordance with the direction in clause second. In further support of this contention, they claim that such technical meaning of the words "accumulated" and "income accumulated" can be assigned reasonably and consistently to those

words, wherever they appear in the instrument, without doing violence to the intent of the settlor, as they gather it from their consideration of the whole instrument and from the evidence of the settlor trustee's conduct in administering these trusts during his life.

On the other hand, the representative of unascertained interests and the guardian *ad litem* of the minor child of John Budlong, deceased son of the settlor, contend that the money appearing as undistributed income in the respective trusts in question should not be distributed by the successor trustee to the life beneficiaries of those trusts but should be added to or treated as the principal thereof. They argue that the issue here is not whether the words "accumulated" or "income accumulated" may possibly have a special or technical meaning in the law of trusts; but it is whether those words must be given such a technical meaning regardless of the settlor's intent as gathered from their use in clause second and elsewhere in the instrument.

They contend that, although such words may, in some possible circumstances, be given the meaning advocated by counsel for the children, such meaning in any event is at best a secondary and technical one; that the primary and ordinary meaning of the word "accumulated" is "to pile up . . . ; to amass; as, to *accumulate* money" (Webster's New International Dictionary (2d ed.), p. 17); and that there is no compelling reason, in the trust instrument or the evidence, that requires us to pass over the primary and ordinary meaning of such words as they appear in the qualifying language in clause second, merely to assume or conclude that they were used in their secondary and technical meaning. This is especially so, they urge, when the primary meaning provides a sensible construction and gives full effect to all of the other words and phrases used in clause second, whereas the technical construction would disregard entirely the important qualifying language or treat it as surplusage. . .

440

They further urge that a reading of clause second, giving all the words their primary and common meaning, makes the direction to the trustee perfectly clear and fits the settlor's intent precisely; but that if the language is held to be ambiguous, a fair reading of the whole instrument and a consideration of its general plan, as confirmed by the settlor's conduct in administering these trusts, will clearly show the settlor's intent that all money credited by him to these trusts as undistributed income should be treated by the successor trustee as principal or in the nature of principal.

We need not consider or decide whether, prior to the settlor's death, the children's interests in the net income were contingent, or vested subject to being divested, upon the exercise of settlor's discretion, because the parties apparently concede that, upon his death without having exercised his discretion to add any net income to the principal of any trust, their interests in either case were then vested. In our opinion the answer to the question here does not depend on the meaning of the words "income accumulated" or their equivalent when considered merely in the abstract; nor on whether they *can* sometimes be used in a technical sense in the law of trusts to mean substantially the conversion of income into principal. The answer depends rather on whether such words in clause second were actually intended to be used in the technical sense rather than in their primary and ordinary meaning:

The specific question, therefore, is whether the direction to the successor trustee in the second paragraph of clause second "to pay over . . . all of the net income . . . (not including, however, any income accumulated from prior years)" was intended to mean that such trustee should pay over *all* of the money appearing as net income, excepting only such income as the settlor had previously added to principal, or should pay over all of the net income excepting, however, such income as the settlor himself had piled

up from prior years and had kept separately as undistributed income.

The answer to that question depends upon the intent of the settlor as it may be ascertained, if possible, from the instrument itself. That intent when ascertained is to be given effect unless contrary to law. In discovering that intent words used in such an instrument are to be given their primary, ordinary and common meaning, unless it plainly appears that they are used in another sense. *Industrial Trust Co.* v. *Wilson,* 61 R. I. 169; *Industrial Trust Co.* v. *Nolan,* 63 R. I. 156. Where it is clear that words which are also capable of a technical meaning are used in that special sense, they will be so interpreted throughout, unless the contrary clearly appears. *Doar* v. *Doar,* 63 R. I. 18; *Starrett* v. *Botsford,* 64 R. I. 1. But it must first be established whether such words were actually intended to be used in a special or technical sense, unless perhaps they are words of art at common law. The words "income accumulated" were not words of art at common law; nor do we think that they must be construed technically at all times even where they may well have been used intentionally in their ordinary connotation. Here the contentions for the children appear to us largely to involve a basic *assumption* that the words "income accumulated" were intended and used in clause second in a special or technical sense only, whereas that is the very fact to be first ascertained.

From our examination of the trust instrument we have found nothing which requires us to pass over such primary, ordinary and common meaning of the words used in the direction to "pay over . . . all of the net income . . . (not including, however, any income accumulated from prior years)", in order to assume or conclude that the word "accumulated" was there intended to be used solely in a secondary and technical meaning. The primary and common meaning of the words "income accumulated" fits the context precisely, whereas a construction according to their technical meaning would require us substantially to disre-

gard the entire qualifying phrase or treat it as surplusage. In other words, if "income accumulated" in its technical sense means "to have withheld income from distribution and to have added it to the principal", there would be little, if any, reason why the above-mentioned qualifying phrase would be added at all. A direction that the successor trustee shall "pay over . . . all of the net income" would be enough, because the added words "(not including, however, any income accumulated from prior years)", if given their technical connotation, would not then refer to *income* at all, but would refer to that which had already become an integral part of the principal.

The result of the argument for the children upon the language "(not including, however, any income accumulated from prior years)" not only makes the addition of this phrase surplusage in clause second, but also has substantially the same result upon several other phrases where the words "income accumulated" or their equivalent are used elsewhere in the instrument. On the other hand, the ordinary meaning of those words gives reasonable effect to all the words and parts of clause second and to all portions of the trust instrument where the words "income accumulated" or their equivalent are used.

Moreover, the argument for the children also appears to overlook entirely the significance of the words "from prior years" as used in clause second. It is doubtful whether an experienced lawyer would have added that phrase at all, if he intended to use the words "income accumulated" in their technical sense, because the natural question would be whether such income had been actually added by the settlor to principal, and not when it was added. Even if the time element were material, it is doubted whether such lawyer would have used the preposition "from" in the qualifying phrase "income accumulated from prior years", if he intended to use the words "income accumulated" in their technical sense. In such a case he would probably have provided that the successor trustee should pay over all of

the net income, not including, however, any income accumulated *during* or *in* prior years, rather than *from* prior years. On the other hand, if he intended to use the words "income accumulated" in their ordinary sense, the phrase "from prior years" would be a pertinent, natural and precise expression.

A construction of clause second according to the primary and ordinary meaning of the words "income accumulated from prior years" is more consistent with the general intent and plan of the settlor, as we gather it from the whole instrument and the evidence, than a construction based upon the technical meaning of those words would be. From the beginning the settlor evidently intended to withhold from distribution such part of the net income as he might deem it wise to withhold for the best interests of the children and the protection of the principal of their trusts. This is shown by the comprehensive discretionary powers reserved to him by the instrument. Furthermore, on January 1, 1930, beginning the first full year after his execution of the trust, the settlor included on his books of account a separate column for undistributed income under each of the five trusts and entered therein amounts of income that he had withheld and carried over from the first six months of administration under these trusts. This indicates strongly that even then he had in mind that he might well carry over from year to year some portion of the net income which, for his own reasons, he would not care to add to principal but which he nevertheless intended to treat and credit on his books as undistributed income. One advantage of that method would be that he could tell quickly, at any time and with certainty, how much thereof he could use, if he desired, for purposes under these trusts without actually invading or reducing the principal thereof.

If that were his intention, he probably could foresee that, at the time of his death, he might well have a substantial sum of undistributed income, thus accumulated or amassed from prior years, as a credit in each trust. In such a case it

seems unlikely that the settlor, notwithstanding he himself deemed it wise to withhold such income from his children, would nevertheless have intended to direct his successor to pay over all such undistributed income to them immediately upon the settlor's decease. To provide against that contingency, in our judgment, he inserted a provision which would not restrict the successor trustee from paying over all current net income, but would restrict him from paying over what he, the settlor, had withheld from distribution and had carried as undistributed income.

Upon consideration of the language used in clause second and elsewhere in the instrument, and the evidence of the settlor's administration of these trusts, we conclude that the words "income accumulated", appearing in the direction to the successor trustee in clause second were intended by the settlor in their primary and ordinary meaning and not in any technical sense.

Counsel for the children in opposing the above construction appear to argue that it would bring about an unreasonable result. They contend that the instrument does not expressly give to the successor trustee any power to add income to principal and that such addition cannot take place automatically. Hence they claim that the primary construction of the words would result in the trustee having possession of large amounts of undistributed income which could neither be added to principal nor be paid over to the children, and therefore must be carried as undistributed income until the termination of the trusts, a result not ordinarily contemplated by a settlor or a lawyer.

An adequate answer to this argument is that, in our opinion, it is based on an erroneous assumption. It ignores certain language in clause sixth of the instrument which provided that the Industrial Trust Company should act as successor trustee and expressly provided that "such new trustee or trustees in each case to enjoy and perform the rights, powers and duties conferred or encumbent upon the original trustee hereunder, subject to the provisions of

Clause Eighth: (a) hereof, in such case the words 'said trustee' and 'his' referring to the trustee, wherever occurring in this instrument shall be deemed to refer to such new trustee or trustees hereunder."

Paragraph (a) of clause eighth deals only with the powers of the successor trustee in relation to investments that are not usually considered "legal". It nowhere limits the successor trustee's powers in any other particular. Therefore, when clause sixth is read in connection with clause eighth (a) and with the conclusion of the first paragraph of clause second, providing the trustee with discretionary power to add any undistributed income to principal, the difficulty assumed by the above-mentioned contention would not arise. Even if such comprehensive powers were not given expressly to the successor trustee in clause sixth, the money credited to the trusts under undistributed income would be withheld from immediate distribution, upon our view of the meaning of the qualification on the successor trustee's power under clause second above referred to, although the income therefrom would naturally be payable to the respective beneficiaries.

Our conclusion therefore is that the successor trustee is directed by the terms of clause second to pay over to the life beneficiaries of the trusts established respectively for the settlor's children all of the net income of such trusts, excepting, however, such part thereof as the settlor himself had amassed *from prior years* and had credited therein as undistributed income.

This brings us to the next question, namely, what period was intended by the phrase "from prior years"? The settlor had his books balanced on December 31 of every year following the execution of the instrument. His accounting year therefore coincided with the calendar year. These considerations lead us to conclude that the words "from prior years" were intended to be used in their ordinary meaning. So construed they refer to years that were closed on his books and were prior to the beginning of the new calendar year.

446

Therefore, in our opinion, the trustee should pay over to the life beneficiaries of the respective trusts, in accordance with the provisions of the trust instrument, all of the net income that may have accrued during the current year of the settlor's death, namely, January 1, 1941 to December 31, 1941; but that such part of the total undistributed income as represents net income that had accrued in the years prior to January 1, 1941 should be withheld by the successor trustee from immediate distribution and be treated as in the nature of principal of the respective trusts.

On December 11, 1944, the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Ira Lloyd Letts, Andrew P. Quinn, F. Stewart Stranahan,* for complainant.

*Tillinghast, Collins & Tanner, James C. Collins, Sidney Clifford,* for respondents Frances Wilson Budlong and Raymond E. Jordan, guardian *ad litem* of Milton Joseph Budlong.

*Greenough, Lyman & Cross, Thomas F. Black, Jr., Bayard Ewing,* for respondent Earle E. Swem, Admr. of estate of John Budlong.

*Fred B. Perkins,* representative of unknown and unascertained persons and persons not in being—*pro se ipso.*

*Roger L. McCarthy,* guardian *ad litem*—*pro se ipso.*